UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELITE CORPORATION MANAGEMENT LIMITED,<br><br>       Plaintiff,<br><br>v.<br><br>PHILIP LANDA and BRETT COOPER, d/b/a MAGNUS FINANCIAL,<br><br>       Defendants,<br><br>LAW OFFICES OF SETH M. GOLDBERG and CHRISTINE M. KOO & IP, SOLICITOR AND NOTARIES,<br><br>       Relief Defendants. | .<br><br>**COMPLAINT**<br><br>**Index No.**<br><br>**Jury Trial Demanded** |

Plaintiff Elite Corporation Management Limited ("Elite Corporation"), by and through its attorneys, Becker, Glynn, Muffly, Chassin & Hosinski LLP, alleges the following against Defendants:

### INTRODUCTION

1. This case arises out of an investment scam that involves the issuance of a false letter of credit affiliated with a recognized banking institution. Defendants went so far as to forge bank documents and hire escrow agents and transaction coordinators in order to give their fraudulent scheme the appearance of legitimacy. Defendants also established a shell operation in New York City in order to pursue international investors from abroad. Defendants promised a specific rate of return, in writing, for the investment at issue.

2.      Specifically, Defendants Brett Cooper ("Cooper") and Philip Landa ("Landa"), through their d/b/a/, Magnus Financial ("Magnus"), lured and defrauded Elite Corporation into entering into an investment contract that set forth a transaction involving a letter of credit from Wells Fargo Bank.  The letter of credit provided Elite Corporation with false assurances that their investment of $300,000 was secured and that they would, at a minimum, receive the return of their investment in the event that the promised rate of return was not achieved.   After Elite Corporation received the letter of credit from Defendants, Elite Corporation agreed to pay out the investment amount pursuant to the investment contract between Elite Corporation and Defendants.

3.      In fact, Defendants' investment program was completely fictitious.  Defendants failed to obtain the letter of credit as they had promised.  Defendants also made a number of other misrepresentations and engage in various other fraudulent acts in furtherance of their scam.  As a result of Defendants' wrongful conduct, Elite Corporation failed to receive the promised rate of return under the parties' investment contract, and Defendants have absconded with Elite Corporation's original investment.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.      Venue is proper pursuant to 28 U.S.C. § 1391 because of the forum selection clause contained in the parties' agreement and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

6. Venue is also proper pursuant to Section 22(a) of the Securities Act and Section 27 of the Exchange Act.

## **PARTIES**

7. Elite Corporation is a foreign business with its principal place of business at 22/F, Hing Yip Commercial Center, 280, Des Voeux Road, Central, Hong Kong.

8. Upon information and belief, Defendant Landa is a resident of New Jersey.

9. Upon information and belief, Defendant Cooper is a resident of New Jersey.

10. Law Offices of Seth M. Goldberg is named as a Relief Defendant with a principal place of business at 23890 Cooper Hill Dr., Valencia, CA 91354.

11. Christine M. Koo & IP, Solicitor and Notaries is named as a Relief Defendant with a principal place of business at 18, Hercourt Road, Sixth Floor, Hong Kong.

## **FACTUAL BACKGROUND: THE MEMORANDUM OF UNDERSTANDING AND THE ESCROW AGREEMENT**

12. Defendant Philip Landa held himself out to the public as the Investment Coordinator of Magnus Financial, a company headquartered at 1440 Broadway, 23rd Floor, New York, NY 10018.

13. Defendant Bret Cooper held himself out to the public as Chief Financial Officer and President of Magnus Financial.

14. Relief Defendant Seth M. Goldberg was Defendants' attorney throughout Defendants' fraudulent scheme.

15. Relief Defendant Christine M. Koo & Ip, Solicitor and Notaries ("Christine M. Koo") was the Escrow Agency that Defendants used to facilitate the fraudulent Scheme. Christine M. Koo is also a party to and signed an escrow agreement signed by Defendant Cooper and Elite Corporation.

16. The scheme commenced in the spring of 2013, when Defendant Philip Landa, purportedly acting as an agent of Magnus Financial, reached out to Elite Corporation via e-mail regarding an investment opportunity.

17. During the spring and summer of 2013, Defendants Landa and Cooper made multiple phone calls and sent numerous e-mails to Elite Corporation regarding the potential investment opportunity. In these communications, Defendants Landa and Cooper both discussed the guaranteed rate of return to Elite Corporation and the fact that Elite Corporation's investment would be protected by way of a letter of credit. These e-mail communications also set forth specific details regarding how the investment transaction would be consummated.

18. Between the dates of July 30, 2013 to August 2, 2013, a representative of Elite Corporation traveled to New York City to meet with Defendants Cooper and Landa. During these meetings, Defendants Cooper and Landa both represented that Elite Corporation would receive a 300% rate of return on its investment within 300 days and that Elite Corporation would receive a letter of credit in the amount of its original investment. According to Cooper and Landa, the letter of credit guaranteed that, at a minimum, Elite Corporation would receive back the amount of its original investment regardless of the ultimate performance of the investment.

19. During the meetings in New York City, Cooper and Landa also both reiterated their roles and involvement with an entity known as Magnus Financial and claimed that they had facilitated similar investment transactions in the past. Elite Corporation has since learned that these representations were false. In particular, Magnus Financial, the name of the purported company that Landa and Cooper falsely represented to Elite Corporation they were employed by, does not exist, did not exist, and was not in fact an incorporated or other legal entity at the time that Cooper and Landa claimed to be acting as its officers. Landa and Cooper's representations

that they were served as officers of Magnus Financial were false, because Magnus Financial was not a legal entity and did not have officers. And Landa and Cooper's representations that they had facilitated similar investment transactions were also false, because, in fact, Landa and Cooper had not facilitated investment transactions in the past. Each of these false statements was made intentionally and as part of Landa and Cooper's fraudulent scheme, in order to induce Elite Corporation to enter into an agreement with "Magnus Financial" for the purpose of defrauding Elite Corporation of its money.

20. After the various discussions and an in-person meeting with Defendants in New York City, Elite Corporation and Defendants – doing business as and holding themselves out as "Magnus Financial" – entered into an agreement on August 12, 2013, titled Memorandum of Understanding (the "Memorandum of Understanding"). Cooper signed the Memorandum of Understanding on behalf of "Magnus Financial." A true and correct copy of the Memorandum of Understanding is attached to the Complaint as **Exhibit A**.

21. Notwithstanding its title, the Memorandum of Understanding was not a mere statement of "understanding," in contemplation of a future contract pending further negotiation, but, rather, was an agreement setting forth the responsibilities of the parties thereto and providing for the exchange of consideration.

22. Pursuant to the Memorandum of Understanding, Elite Corporation was to "invest" $300,000.00 and, in return, was to receive "no less than six times his [sic] original sum of money put into the program." *See* Ex. A at 1.

23. Specifically, the Memorandum of Understanding outlined the following procedures for the investment of Elite Corporation's funds:

  A. Elite Corporation was to transfer the amount of $300,000 into an escrow account selected by Defendants.

  B. Once the funds were transferred to the escrow account, Defendants were to provide a Stand-by Letter of Credit ("SBLC") in the amount of 104% of the principal amount in the escrow account.

  C. Magnus Financial was required to pay within 30 days the promised return on Elite Corporation's investment.

  D. In the event that the promised return was not paid out within that time, Elite Corporation had the option either (i) to cancel the contract and receive the full return of its investment, along with a defined "penalty" amount, or (ii) to extend the contract.

*Id.* at 1-2.  In exchange for its services in facilitating the transaction and arranging for the SBLC, Defendants were to receive a percentage of the return from the investment.  *See id.* at 1.

  24. Also pursuant to the terms of the Memorandum of Understanding, Elite Corporation and "Magnus Financial" – *i.e.,* Defendants – entered into an Escrow Agreement on August 19, 2013. A true and correct copy of the Escrow Agreement is attached to the Complaint as **Exhibit B**.  Defendant Cooper signed the Escrow Agreement as the "President" of "Magnus Financial."  *See* Ex. B. at 5.

  25. The Escrow Agreement provides that the Escrow Agent, Relief Defendant Christine M. Koo, will hold Elite Corporation's funds until the terms of Memorandum of Understanding are carried out.  *Id.* ¶ 6.  Christine Koo signed the Escrow Agreement on behalf of Christine M. Koo.  *Id.* at 5.

26. Significantly, moreover, the Escrow Agreement further provides that the Escrow Agent may not release the $300,000 investment from escrow until two days after Elite Corporation receives verification of the SBLC. *See id.* ¶ 6.

27. The requirement for Defendants (in their capacity as purported agents of Magnus Financial) to provide the SBLC and a process for its verification were critical to Elite Corporation's decision to enter into both the Memorandum of Understanding and the Escrow Agreement.

28. Pursuant to the Memorandum of Understanding, Elite Corporation transferred $300,000.00 to the designated Escrow Account on August 22, 2013.

29. On or about August 29, 2013, Defendant Cooper informed Elite Corporation that he had received the SBLC from Wells Fargo Bank, and on or about September 10, 2013, Cooper mailed the SBLC to Elite Corporation at its offices in Hong Kong.

30. On August 21, 2013, Elite Corporation wrote a letter to from Wells Fargo Bank using contact information that had been provided by Cooper and Landa. Elite Corporation received return correspondence from someone purporting to be a representative of Wells Fargo Bank, who purported to confirm that the SBLC was valid.

31. Based on its receipt of the SBLC and the written confirmation ostensibly from Wells Fargo verifying the SBLC, Elite Corporation did not dispute the validity of the SBLC, and its funds were dispersed from the escrow account by Relief Defendant Christine M. Koo. Christine M. Koo dispersed some of the those funds to a client trust account held by Relief Defendant Law Offices of Seth M. Goldberg.

32. In fact, however, and unbeknownst to Elite Corporation at the time, the SBLC was a counterfeit document drafted by Defendants, and the e-mail that had purportedly come

from Wells Fargo was also a fraudulent communication prepared and sent by Defendants as part of and in furtherance of their fraudulent scheme.

### ELITE CORPORATION LEARNS THE TRUTH: THE "INVESTMENT" WAS A SCAM

33. Pursuant to the Memorandum of Understanding, Elite Corporation was supposed to receive a payment of $1.8 million on September 12, 2013, representing its initial investment of $300,000 plus the 500% return, or $1.5 million. *See* Ex. A. at 1-2. Neither Defendants nor Relief Defendant Christine M. Koo made the payment on September 12, 2013 or in the days thereafter.

34. Accordingly, Elite Corporation attempted to exercise its right under the Memorandum of Understanding to cancel the contract and call the SBLC. *See* Ex. at 2.

35. In particular, on September 26, 2013, Elite Corporation contacted Wells Fargo Bank to liquidate the SBLC pursuant to the Memorandum of Understanding. *See id.* Wells Fargo Bank notified Elite Corporation that the SBLC was a forgery.

36. Elite Corporation has attempted to contact Defendants regarding the misrepresentations and breach of the Memorandum of Understanding on numerous occasions. Defendants have failed to respond to Elite Corporation's communications and requests for return of the funds.

37. To date, Elite Corporation has neither received the promised return on its investment, nor has it received the return of its investment amount.

## COUNT I

### VIOLATIONS OF SECTION 5(A) AND 5(C) OF THE SECURITIES ACT OF 1933, 15 U.S.C. § 77 (AGAINST DEFENDANTS COOPER AND LANDA)

38. Elite Corporation restates the allegations contained in paragraphs 1 through 37 as though set forth here in their entirety.

39. Defendants were required under the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77, to file a valid registration with the Securities and Exchange Commission (the "Commission") in connection with the investment opportunity.

40. The MOU constitutes an investment contract and thus a security under the securities laws.

41. By their conduct, Defendants, directly or indirectly: (i) made use of means of instruments of transportation or communication in interstate commerce or of the mails to sell, through the use of medium of a prospectus or otherwise, securities as to which no registration statement was in effect; (ii) for the purpose of sale or delivery after sale, carried or caused to be carried through the mails or in interstate commerce, by means of instrument of transportation, securities as to which no registration statement was in effect; and (iii) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy, through the use or medium of a prospectus or otherwise, securities as to which no registration statement had been filed.

42. No valid registration statement was filed or was in effect with the Commission in connection with Magnus Financial.

43. By reason of the foregoing, Defendants violated Sections 5(a) and 5(c) of the Securities Act.

## COUNT II

### BREACH OF CONTRACT
### (AGAINST DEFENDANTS COOPER AND LANDA)

44.     Elite Corporation restates the allegations contained in paragraphs 1 through 43 as though set forth here in their entirety.

45.     Elite Corporation and Defendants, having held themselves out as officers of Magnus Financial, are parties to the Memorandum of Understanding, a valid and enforceable agreement.

46.     Elite Corporation performed all of its obligations by tendering payment consistent with the terms of the parties' agreement.

47.     Defendants breached the Memorandum of Understanding by failing to provide Elite Corporation the specified return on its investment and by refusing to return Elite Corporation's funds upon receipt of Elite Corporation's repeated requests for such return.

48.     Defendants' breach of the Memorandum of Understanding was material, and Elite Corporation has been damaged in the amount of no less that than $300,000 as a direct result of Defendants' material breaches.

## COUNT III

### FRAUDULENT MISREPRESENTATION
### (AGAINST DEFENDANTS COOPER AND LANDA)

49.     Elite Corporation restates the allegations contained in paragraphs 1 through 48 as though set forth here in their entirety.

50.     As set forth in detail above, Defendants made various representations of material fact to Elite Corporation.  Defendants also disclosed some information to Plaintiff regarding the purported investment but concealed other information.

51. As an example, both Cooper and Landa represented on multiple occasions that they held officer positions in Magnus Financial and that Magnus Financial was a company for which they worked. These statements were false when made. Both men falsely held themselves out as officers of a company which did not, in fact, exist.

52. But for these false representations, Elite Corporation would not have entered into discussions with Defendants about the potential investment and would not have entered into a contract with "Magnus Financial." Elite Corporation relied on these false statements in deciding to enter into both the Memorandum of Understanding and the Escrow Agreement.

53. By way of further example, both Cooper and Landa represented on multiple occasions that Elite Corporation's investment would be invested in a manner specified by Elite Corporation and consistent with the terms of the Memorandum of Understanding.

54. Defendants also represented that Elite Corporation would receive a specified rate of return on its investment or, alternatively, that Elite Corporation would receive back its invested funds.

55. Defendants further falsely represented that Magnus was a legitimate investment business and that Defendants were offering legitimate investment services.

56. Defendants falsely represented that they would provide a valid SBLC to Elite Corporation.

57. Defendants' statement that they would provide a valid SBLC was false when made. In particular, at the time they represented that they would provide a valid SBLC to Elite Corporation, Defendants knew that they would never do so. They knew this because they had already conceived of their scheme, which was, instead, to forge the SBLC with the purpose and

11

intention of inducing Elite Corporation to permit the release of its $300,000 investment from Escrow into Defendants' hands.

58. Defendants also forged the SBLC and passed it off as valid. In particular, Defendant Cooper falsely stated that he had received the SBLC from Wells Fargo, when, in fact, he never received an SBLC from Wells Fargo. The statement was false and made to induce Elite Corporation to allow the release of the escrow funds. Cooper then sent the forged SBLC to Elite Corporation, and in so doing falsely represented that the SBLC was a valid communication from Wells Fargo.

59. Defendants also forged a confirmation from "Wells Fargo" to Elite Corporation, which purported to confirm the validity of the forged SBLC.

60. Each and every statement made in the Memorandum of Understanding about Magnus Financial's obligations to perform was false when made, because Magnus Financial did not exist and because Defendants had no intention of performing the agreement under any circumstance; the entire agreement, together with the Escrow Agreement, was a sham created to trick Elite Corporation into delivering $300,000 to Defendants.

61. The SBLC and the purported confirmation from "Wells Fargo" were both created by Defendants and were false when made and constitute affirmative misrepresentations by Defendants to Elite Corporation. Defendants knew that these representations were false when made.

62. Defendants made all of these representations with the intention of inducing Elite Corporation's reliance upon the misrepresentations, and did in fact induce Elite Corporation's reliance. Defendants also withheld the information described above for the purpose of inducing

Elite Corporation to rely on false information and to cause it both to transmit funds to the Relief Defendants and to allow the transfer of its funds from the Relief Defendants to Defendants.

63. Defendants knew that their misrepresentations and failure to disclose the truth—that they had not obtained a valid SBLC; that the SBLC was a forgery; that the Wells Fargo confirmation was a forgery; that Magnus Financial was not a real entity; that they had no investment track record; that the entire "investment opportunity" was a scam—would mislead Elite Corporation and cause it to transmit and/or release funds to Defendants.

64. Elite Corporation acted in reliance upon Defendants' misrepresentations. Elite Corporation would not have transferred $300,000 to the Escrow Account in the first place, and most certainly would not have allowed the release of the funds from the Escrow Account, but for the affirmative misrepresentations, omissions and misimpressions created by Defendants.

65. As a direct and proximate result of Plaintiff's reasonable reliance on Defendants' intentional and/or reckless misrepresentations and omissions, Elite Corporation has suffered damages of no less than $300,000.

## COUNT IV

### FRAUDULENT INDUCEMENT
### (AGAINST DEFENDANTS LANDA AND COOPER)

66. Elite Corporation restates the allegations contained in paragraphs 1 through 65 as though set forth here in their entirety.

67. Defendants Cooper and Landa made multiple material misrepresentations to Plaintiff, as stated above, including but not limited to:

    a. That they were presenting a legitimate investment opportunity;

    b. That Magnus Financial was a legitimate and operating entity and that Defendants were employed by Magnus Financial;

    c. That they had a track record of previous successful investment facilitations;

    d. That Elite Corporation would be guaranteed a specific rate of return if it signed the contract;

    e. That Elite Corporation's investment would be secured by a valid SBLC from a banking institution; and

    f. That the SBLC would be valid and serve as collateral should Elite Corporation not receive the specified rate of return.

68. These misrepresentations occurred in early August 2013.

69. Defendants' misrepresentations were false when made.

70. Defendants knew these statements were false when they made them or they made them recklessly as a positive assertion without knowledge of their truth. Defendants knew these statements were false when made because, on information belief, there was never any "investment opportunity" in which Defendants intended to invest Elite Corporation's funds; because Defendants never intended to obtain a valid SBLC from a banking institution; and because, at the time they made these misrepresentations, Defendants planned, instead, to forge the SBLC.

71. Defendants intended Elite Corporation to rely on these material misrepresentations in order to induce Elite Corporation to sign the Memorandum of Understanding and the Escrow Agreement and to induce Elite Corporation to transfer $300,000 into the Escrow Account and to permit the release of those funds to Defendants.

72. Defendants also forged the SBLC and provided it to Elite Corporation for the specific purpose of inducing Elite Corporation to allow the release of its $300, 00 from the Escrow Account to themselves.

73. In reliance on Defendants' material misrepresentations, Elite Corporation signed the Memorandum of Understanding and the Escrow Agreement, transferred $300,000 into the Escrow Account, and permitted the release of the $300,000 from the Escrow Account to Defendants.

74. Elite Corporation's reliance on Defendants' material misrepresentations caused it to suffer damages in excess of $300,000.

## COUNT V

### IMPOSITION OF CONSTRUCTIVE TRUST (AGAINST ALL DEFENDANTS)

75. Elite Corporation restates the allegations contained in paragraphs 1 through 74 as though set forth here in their entirety.

76. Upon information and belief, Defendants Cooper and Landa transferred Elite Corporation's funds to the Relief Defendants and/or to unknown persons or entities with the intent to conceal the transfers.

77. Defendants never had any intent to pay the promised rate of return to Elite Corporation or to return the monies transferred to them for investment on Elite Corporation's behalf.

78. Upon information and belief, Defendants obtained and transferred Elite Corporation's money for the purpose of defrauding it.

79. Equity and good conscience require that a constructive trust be imposed over the funds that Defendants obtained or caused to be obtained from Elite Corporation. Without such a constructive trust, Defendants will be unjustly enriched.

### COUNT VI – CONVERSION AS TO DEFENDANTS LANDA AND COOPER

80. Elite Corporation restates the allegations contained in paragraphs 1 through 79 as though set forth here in their entirety.

81. Defendants received the funds specified in the Memorandum of Understanding from Relief Defendant Christine M. Koo, who received the funds from Elite Corporation.

82. The funds were a discrete, segregated, identifiable fund and were sent by Elite Corporation to an Escrow Account set up specifically by Relief Defendant Christine M. Koo in connection with the Memorandum of Understanding and the Escrow Agreement.

83. Elite Corporation has repeatedly requested the return of its funds from both Christine M. Koo and Defendants.

84. Defendants have deliberately and wrongfully retained the specified funds despite Elite Corporation's request for the return of its funds.

85. Defendants' actions constitute a conversion of Elite Corporation's personal property, and Plaintiff has been damaged as a result.

## COUNT VII

### UNJUST ENRICHMENT
### (AGAINST DEFENDANTS LANDA AND COOPER)

86. Elite Corporation restates the allegations contained in paragraphs 1 through 86 as though set forth here in their entirety.

87. In the alternative, should the Court determine that the Memorandum of Understanding is not a valid and enforceable contract, Defendants have enriched themselves at the expense of Elite Corporation.

88. Defendants collected $300,000 from Elite Corporation and provided it nothing in return. Defendants were supposed to arrange for the SBLC, but instead forged it, inducing Elite Corporation to allow the Escrow Agent to release the $300,000 to the Defendants.

89. Equity and good conscience require that Defendants not be permitted to be enriched by retaining possession of, or failing to repay, Elite Corporation's funds.

WHEREFORE, Plaintiff demands judgment in its favor against the defendants, jointly and severally, as follows:

> A. On Counts I through IV, VI and VII, an award based on monetary damages suffered by Elite Corporation, in an amount to be determined at trial, but no less than $300,000, together with prejudgment interest, costs, and attorneys' fees.
>
> B. On Count V, for an order imposing a constructive trust over Defendants, accounts to account for all money and assets transferred as a result of the above allegations.
>
> C. For such other legal and equitable relief as the Court may deem the plaintiff is entitled to receive.

Dated: August 18, 2016
   New York, New York

>   BECKER, GLYNN, MUFFLY, CHASSIN & HOSINSKI LLP
>
>
>   By: /s/ Robin L. Alperstein
>       Robin L. Alperstein
>   299 Park Avenue
>   New York, New York 10171
>   Tel: (212) 888-3033
>
>   *Attorneys for Plaintiff*

OF COUNSEL:

VARNUM LLP
Brion B. Doyle
Hamid M. Soueidan II
Dena H. Shuayto
Bridgewater Place, P.O. Box 352
Grand Rapids, MI 49501-0352
(616) 336-6000

17